**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **ALEX HILL,**<br>Plaintiff<br><br>v.<br><br>**Merrick B. Garland**,<br>U.S. Attorney General,<br>U.S. Department of Justice,<br>Defendant | Case No.:<br><br><br>**COMPLAINT<br>DEMAND FOR JURY TRIAL** |

## <u>VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL</u>

COMES NOW Plaintiff Alex Hill ("Plaintiff" or "Hill"), by and through its undersigned counsel, and hereby files his Verified Complaint against Defendant Merrick Garland, United States Attorney General of the United States Department of Justice ("DOJ"), for actions taken by its law enforcement agency, the Federal Bureau of Investigation ("FBI"), in engaging in racial discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended by 42 U.S.C. Section 2000e-1 *et seq.* ("Title VII"), and in denying due process of law in violation of the Fourteenth Amendment of the United States Constitution. Plaintiff alleges, upon information and belief, the following facts:

## INTRODUCTION

Hill is a 51-year old former FBI Supervisory Special Agent who devoted nearly half of his lifetime protecting the United States and its citizens from violent crime and international threats to its homeland.  After spending the last few years of his career addressing and raising the alarm on discriminatory practices in the FBI's Atlanta Division, a law enforcement agency Hill once served with pride, and braving the unlawful retaliation and continued racially discriminatory practices from the FBI that followed from his attempts to address the discriminatory practices, Hill finally exhausted his administrative remedies and now seeks to be heard in this Court.

Hill hereby files this Verified Complaint against Attorney General Merrick Garland, in his official capacity, for monetary damages and equitable relief for injuries Hill suffered as a result of the FBI's racial discrimination, the FBI's retaliation against Hill for his opposition to unlawful employment practices, and the FBI's lack of due process surrounding his summary termination.  Hill further requests a jury trial.

## NATURE OF THE ACTION

1.    This is an action for damages and to secure protection of and to redress racial discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e-1 *et seq.* ("Title VII")

and lack of due process in violation of the Fourteenth Amendment of the United States Constitution.

## **PARTIES**

2.      Plaintiff Alex Hill ("Hill"), an African American (also referred to as Black herein), at all relevant times hereto, served as a Special Supervisory Agent ("SSA") of the FBI, a federal law enforcement agency within Defendant DOJ.

3.      Hill was, at all relevant times hereto, a resident of the State of Georgia.  Hill currently resides at 551 Lakeshore Drive, Berkley Lake Ga, 30096 and has a mailing address located at 2400 Old Milton Parkway, Suite 1131, Alpharetta, Georgia 30009.

4.      Defendant DOJ is located at 950 Pennsylvania Ave., NW, Washington, DC 20530-0001.  The DOJ is the leading law enforcement agency in the United States and administers the FBI.

5.      The FBI's principal headquarters is located at 935 Pennsylvania Ave., NW, Washington, DC 20535.

6.      The FBI is authorized to serve throughout the United States and abroad in its mission to combat violent crimes and collect intelligence against enemies both foreign and domestic who pose a threat to the interests of the United States government and its citizens.

7.     Throughout the period encompassed by this Complaint, the FBI assigned Hill to the Atlanta Division of the FBI, which is located at 3000 Flowers Road, Atlanta Georgia, 30341.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8.     Plaintiff Alex Hill has exhausted his administrative remedies and received, on or about September 16, 2021, a Decision on Request for Reconsideration from the U.S. Equal Employment Opportunity Commission (the "EEOC"), advising Plaintiff Hill of its denial of his request for reconsideration, in EEOC Appeal No. 2020003344 (March 31, 2021).  Plaintiff timely files this Complaint within 90 days of receipt of the decision.

## JURISDICTION

9.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331, which gives district courts original jurisdiction over civil actions arising under the Constitution, laws, or treaties of the United States, and pursuant to 28 U.S.C. § 1343, which gives district courts jurisdiction over actions to secure civil rights extended by the United States government.

## VENUE

10.     Hill was, at all relevant times hereto, a resident of the State of Georgia. Venue is proper in the Northern District of Georgia pursuant to 28

U.S.C. § 1391(2) because a substantial part of the events or omissions giving rise to the claims occurred within this district.

## OPERATIVE FACTS

## HILL'S EMPLOYMENT WITH THE FBI

11.     For approximately 20 years, Hill served the United States as an agent of the FBI with a distinguished record of achievement as a federal agent.

12.     Prior to serving under the leadership of SAC J. Brit Johnson, ASAC Angela Tobon, and ASAC Murang Pak, Hill had enjoyed an exemplary employment history with the FBI.

13.     From 1997 to 2005, Hill worked in the Atlanta Division of the FBI, where he was assigned to violent gangs as well as holding additional duties of working undercover, being a member of the SWAT team, and being a member of the national recruiting team.  From 2005 to late 2007, Hill was promoted to FBI Headquarters in Washington, D.C. as a supervisor over undercover operations.

14.     In late 2007, Hill was assigned to FBI's attaché office in Baghdad, Iraq where he was promoted shortly after his assignment to second in command as the Deputy Legal Attaché.  Hill went on to serve for 18 months in Iraq and was transferred temporarily to the FBI's Australia attaché office as the Acting Legal Attaché responsible for Australia, New Zealand, and the South Pacific Isles.

15.     In 2009, Hill returned to FBIHQ where he was assigned to the Inspection Division of the FBI as an Assistant Inspector In-Place for 14 months then to the Public Corruption Division for another year before returning to the Atlanta Division as a supervisor in early 2012.

16.     Prior to 2016, Hill had not received an unsatisfactory performance rating.  Hill, in fact, often received the performance rating of "Excellent" or the highest rating of "Outstanding."

17.     Consistent with his performance ratings and work ethic from 2005 through 2016, the FBI promoted Hill approximately five times in position or rank.  At the height of his career, Hill attained the grade and step for an FBI Agent of GS-15, step 4.

## HILL SOUNDS THE ALARM ON THE ATLANTA DIVISION

18.     In 2016, Hill was serving as the supervisor of international terrorism in the Atlanta Division and supervised by Assistant Special Agent in Charge ("ASAC") Angela Tobon, a white female.

19.     In February 2016, the Atlanta Division underwent a field office inspection by the FBI Headquarters Inspection Division.  During the inspection, supervisors and program leaders within the Atlanta Division were interviewed.

20.    During his interview with inspectors, based on being a supervisor, Hill disclosed his perceived leadership deficiencies of SAC Johnson (White male), ASAC Pak (Asian male), and ASAC Angela Tobon (White female), to include complaints of racial discrimination and retaliation perpetrated against him.

21.    Prior to members of the inspection team departing the Atlanta Division, Hill was advised by Inspector Waller that, per FBI Director Comey, Hill was not to be subjected to any type of reprisal or retaliation for disclosing the information related to racial discrimination Hill had shared.

22.    Because Hill had made the disclosures of leadership deficiencies and discrimination in the Atlanta Division, ASAC Tobon took a vindictive and retaliatory disposition towards Hill.  For instance, ASAC Tobon advised Hill that she would rate his promotional application lower across the board because she disapproved of individuals who essentially threw their management under the bus.  As a supervisor, ASAC Tobon knew that her action would impair Hill's ability to be promoted.

23.    Although Hill was divorced in December 2013 (Civil Action 13-A-00739-3), during 2016, Hill was in the midst of a longstanding, ongoing, and very contentious divorce/child custody matter.  In February 2016, during a contentious

hearing in this matter, the judge ordered Hill to be held in custody for 10 days for contempt of court.

24.     On or about late March or early April 2016, Hill learned he was under an administrative inquiry by the FBI's Office of Professional Responsibility ("OPR").  The administrative inquiry was led by Assistant Director Candice Will ("AD Will"), a white female.  This investigation was based upon alleged off-duty misconduct by Hill related to court proceedings in his divorce/child custody matter and allegations that Hill may have used his government charge card for personal use.

25.     Upon information and belief, ASAC Tobon made the allegation about Hill's use of a government charge card in retaliation for Hill's complaints to inspectors during the February 2016 inspection.

26.     Hill utilized his government credit card as well as his personal credit cards for car rentals.  The rental car company kept both cards under Hill's account profile.  At times, the rental car company held the reservations under Hill's government credit card; however, Hill did not charge his government credit card when he used rental cars for personal use. Hill paid for his personal rentals with his personal credit cards.

27.     The FBI did not incur expenses for Hill's personal rental car expenses.

28.     In May 2016, Hill contacted the EEO Office to discuss his complaints of race discrimination with an EEO official.

29.     In May or June 2016, an anonymous letter was allegedly sent to then FBI Director James Comey to inform Director Comey of Hill's interactions in court in his personal divorce/child custody proceedings and to request that the FBI investigate Hill.  Hill was able to finally review this letter during a later hearing, but he was not able to keep a copy.

30.     On or about May 2016, SAC Johnson and ASAC Tobon advised Hill that he would be transferred from his assignment over the highest priority terrorism squad to one of the lowest priority squads, white collar, in the Atlanta Division.

31.     During the same time that SAC Johnson informed Hill of the forthcoming transfer, SAC Johnson advised Hill that he spoke to FBI Deputy Director Andrew McCabe regarding Hill's performance as a supervisor.  SAC Johnson told Hill that McCabe recommended that Hill be removed from his higher-priority squad.

32.     Hill, having once served as an Assistant Inspector-In-Place in the Inspection Division, was familiar with the FBI's procedures for removal of a supervisor.  Pursuant to FBI policy, any supervisor removed as the result of an inspection was to be documented in a communication outlining performance deficiencies and sent by the Human Resource Division at FBI Headquarters to the employee's field office. The employee would then receive a copy as well.

33.     Because Hill did not receive any communication outlining any performance deficiencies from anyone in the Atlanta Division or FBI Headquarters, SAC Johnson's statement appeared to be malicious or untrue.

34.     Upon information and belief, Hill's reviews for performance, based upon established metrics as well as peers, were very favorable.

35.      Nonetheless, on or about June 2016, Hill was transferred from his assignment over the terrorism program to the white collar program.

## HILL'S PERSONAL DIVORCE/CHILD CUSTODY MATTER RESURFACES

36.     In August 2016, local media covered a recusal hearing regarding the judge presiding over Hill's divorce/child custody matter.

37.     As a result of the local media coverage, Hill was interviewed by a national news station.

38.     In accordance with FBI policy, Hill informed SAC Johnson of the media coverage.

## HILL'S PERFORMANCE REVIEW IS DOWNGRADED FROM "EXCELLENT" TO "SUCCESSFUL" WITHOUT VALID JUSTIFICATION

39.     After being transferred to white collar in June 2016, Hill was due for his annual performance review in September/October 2016. Hill's rating official at that time was ASAC Douglas Korneski.

40.     ASAC Korneski advised Hill that he had rated him "Excellent," but after making his assessment based upon his evaluation of Hill's performance, ASAC Korneski further explained to Hill that he had spoken to SAC Johnson and ASAC Tobon for input.

41.     According to ASAC Korneski, SAC Johnson requested that ASAC Korneski give Hill the lowest performance rating possible so Hill's performance would warrant a performance improvement plant (PIP).  A PIP would make Hill vulnerable to additional oversight and subject to removal from management or dismissal from the FBI.

42.     According to ASAC Korneski, ASAC Tobon advised ASAC Korneski that she had written notes outlining Hill's performance deficiencies.

43.     ASAC Korneski did not provide Hill a copy of ASAC Tobon's notes, moreover, Hill was not given a copy of the notes by any reviewer.

44.     In further search of ASAC Tobon's notes, Hill asked for a copy of his file from SAC Johnson's secretary, Velda North.  Ms. North advised Hill that no such file existed.

45.     Inexplicably, the notes allegedly written by ASAC Tobon were given to Hill for the first time in or around late January 2020. There was no name, date, or signature on the document.  In addition, these notes had not been mentioned to Hill during the inspection, Hill's mid-year review, nor any other time.

46.     ASAC Korneski's September/October 2016 performance evaluation ultimately revealed a rating of "Successful" for Hill (a downgrade from the previously planned "Excellent" rating).  ASAC Korneski's rating appeared to be influenced by his conversations with SAC Johnson and ASAC Tobon.

47.      According to FBI policy, ASAC Korneski's evaluation of Hill did not require the input of any other supervisor because Korneski had supervised Hill for more than 90 days.

48.     Hill declined to sign the performance evaluation and contested it in accordance with FBI policy.

## RESPONSE TO HILL'S COMPLAINTS OF DISCRIMINATION AND RETALIATION

49.     In August of 2016, Hill and SAC Johnson attended a proceeding to try to resolve Hill's complaints of discrimination and retaliation.

50.     The proceeding was not successful; however, SAC Johnson called Hill early the next morning and asked Hill to meet over coffee.  Hill and SAC Johnson spoke by phone at that time.

51.     During the telephone conversation, SAC Johnson told Hill that he "made a mistake" and acknowledged that ASAC Pak was a problem.  SAC Johnson offered to transfer Hill to a higher priority squad, the Domestic Terrorism squad, to replace the sitting Domestic Terrorism squad supervisor, Ashley Johnson, who was a Black female.

52.     Hill declined SAC Johnson's offer as Hill felt the offer was an attempt to sweep the discriminatory attacks on Hill away by an unfair transfer of another minority agent who was performing well, and thus, was another form of discrimination.

53.     After months of trying to resolve issues informally, on or about October 20, 2016, Hill filed an official EEOC Complaint of Discrimination.

54.    In late October or November of 2016, a new SAC for Atlanta, David LaValley, arrived.

## **HILL'S PERSONAL DIVORCE/CHILD CUSTODY MATTER RESURFACES AGAIN AND HE IS TERMINATED**

55.    During the ongoing litigation in Hill's divorce/child custody matter another judge was assigned to Hill's case after the prior judge (Judge #1) was recused.

56.    Around July 2017, Hill appeared before AD Will for his OPR inquiry (*see* para 24 *supra*) in Washington, D.C.  At the time, AD Will was the head of the FBI's Office of Professional Responsibility and served as the FBI's chief disciplinarian.

57.    AD Will issued a suspension letter to Hill suspending Hill for 33 days without pay and demoting Hill to a nonsupervisory position because of Judge #1's finding Hill in contempt of court.  Hill appealed this suspension.

58.    On November 2017, the newly assigned judge (Judge #2) in Hill's personal divorce/child custody matter issued another Order finding Hill in contempt of Court on numerous grounds and ordered that Hill be incarcerated until paying a designated sum to the registry of the court.  The Court further suspended the order for 30 days to allow Hill the "opportunity to purge himself of

his contempt prior to being incarcerated for civil contempt." As to criminal contempt, the Court ordered that Hill be incarcerated for 60 days.

59.      Soon thereafter, Hill informed ASAC Matthew Alcoke and SAC LeValley that he planned to appeal the November 2017 Order.  The appeal was filed on or about December 12, 2017, and Hill provided a copy of his appeal to Alcoke and LeValley.

60.      On or about December 5, 2017, a second OPR investigation was opened against Hill based on the November 2017 Order.  In violation of FBI policy, AD Will did not refer this matter to the Inspection Division for investigation.

61.      On or about December 13, 2017, without warning, AD Will sent orders to the Atlanta Division to summarily dismiss Hill from the FBI. When an agent is summarily dismissed, no additional procedural protections, including an appeal, are available.

62.      On or about January 12, 2018, Hill filed an EEOC complaint alleging discrimination by the FBI on the basis of race and retaliation for prior EEO activity when, on or about December 13, 2017, he was summarily removed from employment with the FBI and punished in a manner inconsistent with white FBI agents.

63.     In comparison to Hill's treatment, white FBI Agents have been convicted of criminal offenses, served time in jail, and continued to enjoy their employment as an FBI Agent.  For instance, upon information and belief:

(a) A white male FBI Agent in the Atlanta Division was arrested and convicted three times for DUI, with one accident resulting in serious bodily injury of a civilian. At one point, FBI agents assigned to the agent's squad picked him up and dropped him off at jail before and after work hours.

(b) A white male FBI Agent, who was an ASAC in another FBI Division, hit a motorcyclist while driving under the influence in an FBI vehicle.  This ASAC was not demoted from his role nor transferred from his division.

(c) A white male Unit Chief at FBI headquarters was dismissed from the FBI for defrauding the government after maintaining extended unauthorized use of an FBI vehicle and utilizing his government credit card for fuel, to include using the vehicle and credit card to take his family on vacation.  The agent was allowed to return to his FBI employment and was dismissed a second time after an act of road rage in an FBI vehicle during which time he accosted a civilian at gun point.  The agent was ultimately allowed to return to the FBI and finish his career.

(d) A white male FBI Agent, a supervisor at FBI headquarters, physically assaulted a minor during a domestic situation knocking the minor unconscious. The supervisor was convicted of assault and allowed to remain employed with the FBI as a supervisor.

(e) A married couple, both of whom were white FBI agents, divorced. During the divorce proceedings the wife presented false evidence to the court. The husband made a complaint of misconduct to be considered for disciplinary action, but the matter was declined for investigation by the FBI.

(f) A white male FBI Agent was placed on administrative leave for physically assaulting a handcuffed prisoner. Because the agent was ultimately not prosecuted, the agent returned to work and received his back pay and benefits for his time lost from his position.

64.    On or about August 12, 2020, the Court signed a Post Judgment Contempt Order holding that Hill would not be incarcerated under the Order so long as he acted as required by the Order.

65.    Hill acted in accordance with the August 2020 Order and thus was ultimately not incarcerated under the terms of the November 2017 Order. In addition, the divorce/child custody matter was resolved.

66.    Hill planned to serve as an FBI agent until he reached the age of 57, which is the FBI's mandatory retirement age for law enforcement agents.

67.    In 2020, Hill was selected to serve as the Deputy Chief of Investigations for the Gwinnett District Attorney; however, due to the FBI's actions discussed above, Hill was ultimately employed as a legal assistant, a lower ranking and lesser paid position within the District Attorney's Office.

## CLAIMS FOR RELIEF

### COUNT I (Violation of Title VII – Race Discrimination)

68.    Plaintiff incorporates by reference, as though fully set forth herein, the allegations contained in the paragraphs 1-67.

69.    Hill is a member of a protected class based upon his race.

70.    Hill's race was a determinative factor in Defendant's adverse employment actions against him.

71.    Hill was treated less favorably than similarly situated individuals outside his protected class.

72.    Defendant violated Hill's right to be free from discrimination in the terms and conditions of his employment on the basis of his race as guaranteed by Title VII of the Civil Rights Act of 1964.

73.    The FBI has a pattern and practice of denying African Americans promotions and other employment opportunities on the basis of their race, in violation of Title VII.

74.    Hill was the subject of adverse employment actions by the FBI when the FBI acted in discrimination based on his race and engaged in retaliation, in ways that were materially adverse to his interests, including but not limited to: (1) assignment to a lesser squad, essentially amounting to a demotion, without valid justification ; (2) lowering of his performance review from "excellent" to "successful" without valid justification; (3) punishing Hill based on actions taken in a personal divorce/child custody matter where Hill was represented by counsel in most of the proceedings; and (4) summarily terminating Hill without due process.

75.    Hill sustained injuries, to include but not limited to, lost wages and benefits, mental and emotional distress, and lost future earning capacity as a result of the FBI's unlawful conduct.

## COUNT II (Violation of Title VII - Retaliation)

76.    Plaintiff incorporates by reference, as though fully set forth herein, the allegations contained in the paragraphs 1-67.

77.    In complaining of race discrimination and filing charges of discrimination and retaliation with the EEOC on numerous occasions from 2016 through 2018, Hill engaged in activity that is protected from retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

78.    The materially adverse actions intentionally undertaken by the FBI were a direct and proximate result of Hill's engagement in the EEOC process, violating the prohibition of retaliation set forth in Title VII.

79.    Defendant's actions in continuing to take adverse actions against Plaintiff following his complaints and charges of discrimination were committed with reckless disregard for Hill's right to be free from discriminatory treatment on account of his opposition to discriminatory practices, all in violation Title VII of the Civil Rights Act of 1964, as amended.

80.    The effect of Defendants' above-mentioned acts has been to deprive Plaintiff of equal employment opportunities and benefits due to him because of his willingness to oppose such discriminatory practices.

81.    The actions taken against the Plaintiff have caused him to suffer both monetary and non-monetary damages.

*82.*    Accordingly, Plaintiff is entitled to the equitable and monetary relief set forth in the following prayer for relief for Defendant' violation of his rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

## COUNT III (Violation of Due Process under the 14th Amendment)

83.    Plaintiff incorporates by reference, as though fully set forth herein, the allegations contained in the paragraphs 1-67.

84.    The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law."

85.    Defendant, through its agent FBI, deprived Hill of a liberty interest without due process of law in violation of the Fourteenth Amendment of the United States Constitution when the FBI summarily fired Hill in violation of its own policies and without due process.

86.    The FBI provides a specific manner by which all employees, and especially supervisors, are to be dismissed or terminated.

87.    Hill requested that he receive an opportunity to hear and confront the evidence against him, whether by investigative proof or by a formal hearing or otherwise.

88.     Hill's request was denied, and he was subsequently summarily terminated.

89.     The FBI did not adhere to its own policies and procedures for dismissal and failed to provide Hill due process before dismissing him.

90.     This constitutional harm to Hill is continuing and will not be relieved unless and until this Court orders the remedy requested by Hill in this Complaint.

91.     Accordingly, Defendant is liable to Hill for procedural violations of the Due Process Clause of the Fourteenth Amendment, and for all damages arising therefrom.

WHEREFORE, Plaintiff Hill requests that the court grant him the following relief:

a. For damages including back pay, front pay, loss of earnings, deferred compensation, and other employment benefits;

b. For compensatory damages for losses resulting from humiliation, mental anguish, harm to reputation, pain and suffering, and emotional distress;

c. For interest on the amount of losses incurred in earnings, deferred compensation, and other employee benefits at the prevailing rates;

d. For reinstatement of Plaintiff to a position of seniority in the DOJ and all benefits attendant thereto that would have afforded Hill but for said wrongful conduct;

e.  That Defendant, its agents, successors, employees and those acting in concert, be enjoined permanently from engaging in each of the unlawful practices, policies, usages, and customs set forth herein;

f.  For restoration of leave and benefits, to include sick leave and annual leave;

g.  For medical expenses that would have been afforded to Hill but for said wrongful conduct;

h.  For costs of suit incurred herein including attorney's fee, to include the EEOC proceedings, and

i.  For such other relief as the court may deem just and proper.

## **JURY DEMAND**

Plaintiff Hill hereby demands a jury trial on all counts stated in this Complaint.

This 15th day of December 2021.

Respectfully submitted,

**KREVOLIN & HORST, LLC**

*/s/ Zahra S. Karinshak*
Zahra S. Karinshak
Georgia Bar No. 407911
karinshak@khlawfirm.com
Jamil A. Favors
Georgia Bar No. 549881
favors@khlawfirm.com

*Counsel for Plaintiff Alex Hill*

One Atlantic Center
1201 West Peachtree Street, N.W.
Suite 3250
Atlanta, Georgia 30309

# VERIFICATION

I, being first duly sworn under oath, personally appeared before the undersigned attesting officer duly authorized by law to administer oaths, do depose and say that I am Alex Hill, and I have reviewed the foregoing Verified Complaint and confirm that the allegations set forth therein are true and accurate where based on my personal knowledge and are believed to be true and correct where based on the knowledge of others.

This 15th day of December, 2021.

_____
Alex Hill

Sworn to and subscribed before me
this 15 day of December, 2021.

_____
Notary Public
My Commission Expires: 4/16/2023

Dovie Madlock
NOTARY PUBLIC
Clayton County, GEORGIA
My Commission Expires 04/16/2023