IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |  |
|---|---|---|
| ALEX HILL, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 1:21-cv-05130-LMM |
| PAMELA BONDI, *U.S. Attorney* | : | |
| *General, U.S. Department of Justice* | : | |
| | : | |
| Defendant. | : | |
| | : | |

## ORDER

This case comes before the Court on the Magistrate Judge's Final Report and Recommendation ("R&R") [84] recommending that Defendant's Motion for Summary Judgment [78] be granted. Both Plaintiff and Defendant have filed objections to the R&R. Dkt. Nos. [88, 89]. Defendant has also responded to Plaintiff's objections. Dkt. No. [90]. After due consideration, the Court enters the following Order:

## I.     LEGAL STANDARD

Under 28 U.S.C. § 636(b)(1), the Court reviews the Magistrate Judge's Report and Recommendations for clear error if no objections are filed. 28 U.S.C. § 636(b)(1). If a party files objections, however, the district court must review *de*

*novo* any part of the Magistrate Judge's disposition that is the subject of a proper objection. Id.

## II. DISCUSSION

Plaintiff has brought claims against Defendant for race discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"). Dkt. No. [29]. Defendant moved for summary judgment on both claims. Dkt. No. [78]. In the R&R, the Magistrate Judge recommended: (A) denying Defendant's Motion as to Plaintiff's race discrimination claim; and (B) granting Defendant's Motion as to Plaintiff's retaliation claim. Dkt. No. [84]. Defendant objects to the first recommendation, while Plaintiff objects to the latter. Dkt. Nos. [88, 89]. Below, the Court addresses the parties' objections to each recommendation.

### A. Plaintiff's Race Discrimination Claim

First, the Magistrate Judge recommended denying Defendant's Motion for Summary Judgment with respect to Plaintiff's race discrimination claim. Dkt. No. [84] at 13–20. In support of this recommendation, the Magistrate Judge relied on evidence showing that Defendant terminated Plaintiff, a Black FBI agent, for off-duty misconduct while allowing white FBI agents to keep their jobs following similar misconduct. Id. Defendant objects, arguing that the other agents were not similarly situated to Plaintiff. Dkt. No. [88]. Specifically, Defendant contends that, because the other agents did not engage in the same misconduct as Plaintiff, Defendant's disparate treatment of the comparators cannot support an inference of discrimination. Id.

The Court agrees with the Magistrate Judge. "In order to survive summary judgment, a plaintiff alleging intentional discrimination must present sufficient facts to permit a jury to rule in her favor." <u>Lewis v. City of Union City</u>, 918 F.3d 1213, 1220 (11th Cir. 2019); <u>see also</u> <u>Buckley v. Sec'y of Army</u>, 97 F.4th 784, 794 (11th Cir. 2024) ("[A] federal-sector employee must show only that a protected characteristic played *any* part in her employer's process in reaching an adverse employment decision."). A Title VII plaintiff may do so by showing that a similarly situated employee outside of the protected class was treated more favorably than the plaintiff. <u>Lewis</u>, 918 F.3d at 1220.

However, a comparator "need *not* be 'similar in all but the protected ways.'" <u>Id.</u> at 1227 (quoting <u>Young v. United Parcel Serv., Inc.</u>, 575 U.S. 206, 228 (2015)). In determining whether comparators are sufficiently similar to the plaintiff, the Court may consider whether the comparators: (1) engaged in the same basic misconduct as the plaintiff, (2) share employment or disciplinary history with the plaintiff, and (3) are subject to the same supervisor and employment policy as the plaintiff. <u>Ward v. Sys. Prods. & Sols., Inc.</u>, 631 F. Supp. 3d 1134, 1143 (N.D. Ala. 2022) (citing <u>Lewis</u>, 918 F.3d at 1227–28).[1]

---

[1] As the Magistrate Judge pointed out, Dkt. No. [84] at 14, the burden-shifting framework under <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973) no longer applies to federal-sector claims. <u>See</u> <u>Terrell v. Sec'y, Dep't of Veterans Affs.</u>, 98 F.4th 1343, 1352 (11th Cir. 2024). Defendant does not contest this, instead arguing that Plaintiff has failed to produce evidence supporting an inference of discrimination—through comparator evidence or otherwise. <u>See</u> Dkt. No. [88] at 3–5.

Here, Defendant terminated Plaintiff after a state court twice held him in contempt and sentenced him to a period of incarceration for his failure to comply with orders relating to child support and custody matters. Dkt. No. [84] at 2–11. Plaintiff identified five comparators who kept their jobs following similar or worse misconduct: (1) a white agent who got drunk in a government car, ran over a motorcyclist, and was consequently convicted of a crime; (2) a white agent who was arrested for drunk driving on three occasions and was sentenced to jail time on his third arrest; (3) a white agent who was convicted of assault for knocking out a minor in a domestic dispute; (4) a white agent who was accused of murdering his wife but later acquitted; and (5) a white agent who was accused of assaulting a handcuffed person. Dkt. No. [78-3] at 52–53, 59. Defendant did not rebut this evidence.

Construing this evidence in the light most favorable to Plaintiff, a reasonable jury could find that Defendant did not terminate white employees for misconduct that was like Plaintiff's. Each of Plaintiff's comparators worked for the FBI as a law enforcement officer and was accused of violating the law.[2] Despite their misconduct, the white employees identified by Plaintiff kept their jobs, while Plaintiff—who is Black—was terminated for similar misconduct. Thus, a reasonable jury could conclude that Defendant's termination of Plaintiff was in part motivated by his race.

---

[2] As the Magistrate Judge pointed out, at least three of Plaintiff's comparators were convicted or served a sentence for their conduct. Dkt. No. [84] at 18–19.

Defendant disagrees, arguing that Plaintiff's conduct is distinguishable. Dkt. No. [88] at 6–13. Specifically, Defendant points out that, unlike the comparators, Plaintiff willfully disobeyed court orders on more than one occasion.[3] Id. Although Defendant is correct that none of the other comparators identified by Plaintiff engaged in the *exact* same conduct as him, the Eleventh Circuit has held that comparators need not be identical to the plaintiff. See, e.g., Lewis, 918 F.3d at 1227; see also Smith v. Outdoor Network Distrib., LLC, 626 F. Supp. 3d 1320, 1342 (M.D. Ga. 2022) (noting that "precise equivalence in culpability is not the ultimate question" (quoting McDonald v. Santa Fe Trail Transp. Co., 427 U.S. 273, 283 n.11 (1976))). While Defendant claims that Plaintiff's misconduct showed a distinctive disregard for the law, the comparators' alleged conduct—which included drunk driving, assaulting other people, and killing other people—would be obviously unlawful to an ordinary person, let alone an ordinary law enforcement officer.[4] For this reason, the

---

[3] To the extent Defendant contends that Plaintiff's conduct is different because it showed repeated disregard for the law, the Court notes that at least one of Plaintiff's comparators was arrested three times for the same misconduct.

[4] Defendant also argues that only one of the comparators identified by Plaintiff worked in a supervisory role, distinguishing the comparators from Plaintiff. Dkt. No. [88] at 11–12. Defendant's argument fails for two reasons. First, at the time Plaintiff was terminated, Defendant had already demoted him to a non-supervisory position. Dkt. No. [75-1] at 83–85; Dkt. No. [78-6] at 3. Second, the record is unclear as to whether the other four comparators were supervisors. Defendant cites only to Plaintiff's deposition testimony in which he specifically identified one comparator as an "ASAC" while describing the others as "agents." Dkt. No. [75-1] at 152–65. But because the phrase "ASAC" itself indicates a particular type of agent, see id. at 72, it is unclear whether other of Plaintiff's

comparators' misconduct could be seen as even more serious than Plaintiff's, even though the comparators did not disobey a court order. In sum, Plaintiff's comparator evidence—construed in the light most favorable to Plaintiff—can support a reasonable inference of discrimination.[5] The Court therefore overrules Defendant's objections and denies Defendant's Motion for Summary Judgment as to Plaintiff's race discrimination claim.

### B. Plaintiff's Retaliation Claim

Next, the Magistrate Judge recommended dismissing Plaintiff's Title VII retaliation claim, reasoning that Plaintiff failed to produce sufficient evidence showing a connection between a protected activity and his termination. Dkt. No. [84] at 20–26. Specifically, the Magistrate Judge noted that the five-month gap between when Defendant learned of Plaintiff's EEOC complaint and when Defendant terminated him was insufficient to show causation. Id. The Magistrate Judge also found that Plaintiff had not produced other evidence connecting his EEOC complaint to his termination. Id. In his Objections, Plaintiff clarifies that he is not relying on temporal proximity to prove his claim, instead arguing that the circumstances of his termination create a question of fact as to whether he was terminated for filing an EEOC complaint. Dkt. No. [89].

---

comparators were also supervisors.

[5] For the same reasons, a reasonable jury could find that, but for Plaintiff's race, Defendant would not have terminated him despite his misconduct. The Court therefore rejects Defendant's contrary argument. See Dkt. No. [88] at 13–15.

The Court agrees with the Magistrate Judge. To prove a Title VII retaliation claim, Plaintiff must produce evidence that he: "(1) engaged in statutorily protected activity; (2) suffered an adverse employment action; and (3) established a causal link between the protected activity and the adverse action." Malone v. U.S. Att'y Gen., 858 F. App'x 296, 303 (11th Cir. 2021). To establish causation, "a plaintiff must show that the relevant decisionmaker was aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated." Patterson v. Ga. Pac., LLC, 38 F.4th 1336, 1351 (11th Cir. 2022) (quoting Jones v. Gulf Coast Health Care of Del., LLC, 854 F.3d 1261, 1271 (11th Cir. 2017)).

Because Defendant terminated Plaintiff approximately five months after Defendant learned of his EEOC complaint,[6] his retaliation claim fails as a matter of law "in the absence of other evidence tending to show causation." Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007); see also Buckley, 97 F.4th at 798 (finding that federal-sector retaliation claims require the plaintiff to show that retaliation for engaging in a protected activity "tainted" the decision-making process for a personnel action).

Here, Plaintiff has not pointed to any affirmative evidence connecting the filing of his EEOC complaint to his termination. Indeed, substantial record

---

[6] The Eleventh Circuit has held—and Plaintiff does not challenge—that a "three to four month disparity between the statutorily protected expression and the adverse employment action" is not close enough to show causation through temporal proximity alone. Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007).

evidence contradicts such a connection. Plaintiff was dismissed just a few weeks after a state court held Plaintiff in contempt for the second time and sentenced him to a period of incarceration. Dkt. No. [79-1] ¶¶ 24–30. Further, Defendant told Plaintiff that it was firing him because of his refusal to comply with the state court's orders. Dkt. No. [78-8]. Plaintiff challenges this explanation, arguing that the jury should decide Defendant's true motivation for terminating him. Dkt. No. [89] at 7–11. But without some evidence supporting Plaintiff's theory that he was dismissed because he filed an EEOC complaint, a reasonable jury could not make such a determination. Thus, Plaintiff's retaliation claim fails because Plaintiff has not produced sufficient evidence of causation.

In arguing otherwise, Plaintiff points to evidence that Defendant "rushed" the termination process by summarily terminating him before he could appeal the state court's contempt order. Dkt. No. [89] at 7–9. However, the fact that Defendant terminated Plaintiff quickly has no bearing on whether Plaintiff's EEOC complaint influenced Defendant to do so. If anything, Defendant's haste in firing Plaintiff just weeks after the state court's contempt order suggests that Defendant was motivated by Plaintiff's second wave of legal troubles—not Plaintiff's EEOC complaint from months earlier. Thus, the Court rejects Plaintiff's argument that the circumstances of his termination support the causation element of his retaliation claim.

Plaintiff also contends that inconsistencies in the deposition testimony of Candice Will—the decisionmaker who terminated Plaintiff—support his

8

retaliation claim. Dkt. No. [89] at 9–11. Specifically, Plaintiff points to Will's testimony that she did not recall talking to Plaintiff about his EEOC complaint, comparing the testimony against other evidence that such a conversation occurred. Id. However, the fact that Will did not recall Plaintiff's EEOC complaint makes it *less* likely that she terminated him because of that complaint. Although Plaintiff is correct that the Court cannot weigh conflicting evidence or make credibility determinations at summary judgment, Will's testimony is not inconsistent with other evidence in the record—it is entirely plausible that Will spoke to Plaintiff about his EEOC complaint in 2017 and subsequently forgot about the conversation in 2024. And, regardless of Will's truthfulness, the Court cannot reasonably construe Will's failure to recall Plaintiff's EEOC complaint as evidence that she dismissed Plaintiff because of that complaint.

Thus, because Plaintiff has failed to produce evidence showing that his protected expression influenced Defendant's decision to terminate him, Plaintiff has failed his burden on a material element of his retaliation claim. The Court therefore grants Defendant summary judgment on Plaintiff's retaliation claim.

### III. CONCLUSION

In accordance with the foregoing, the Court **OVERRULES** the parties' Objections [88, 89] and adopts the Magistrate Judge's Report and Recommendation [84] as the opinion of this Court. Defendant's Motion for Summary Judgment [78] is **GRANTED in part** and **DENIED in part**: the Court **DISMISSES** Plaintiff's retaliation claim, but Plaintiff's race discrimination claim survives.

The parties are **DIRECTED** to confer and submit a pre-trial order within **30 days** of this Order. If the parties request an extension of this deadline for further attempts to settle the case, they are to contact the Court. At any party's request, the Court will also refer this case to a Magistrate Judge for a mediation at no cost to either party.

**IT IS SO ORDERED** this 14th day of April, 2025.

**Leigh Martin May**
**United States District Judge**